# IN THE UNITED STATED DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HELEN MANNING<br>1151 Harrogate Way<br>Ambler, PA 19002 | : <br> : <br> : | |
| | : | NO.: 2:16-cv-05451 |
| v. | : <br> : | |
| CIGNA GROUP INSURANCE<br>Two Liberty Place<br>1601 Chestnut Street<br>Philadelphia, PA 19192 | : <br> : <br> : <br> : <br> : | |
| AND | : <br> : | |
| LIFE INSURANCE COMPANY OF NORTH<br>AMERICA<br>Two Liberty Place<br>1601 Chestnut Street<br>Philadelphia, PA  19192 | : <br> : <br> : <br> : <br> : | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

### INTRODUCTION

1.      This is a claim for long-term disability benefits by Helen Manning (hereinafter referred to as "Plaintiff") in connection with a policy issued to her by her employer, Lockheed Martin Corp., through its insurers and administrators Defendants, Cigna Group Insurance and Life Insurance Company of North America.

### PARTIES

2.      Plaintiff, Helen Manning (hereinafter referred to as **"Plaintiff"**), is an adult individual residing at the captioned address in the Commonwealth of Pennsylvania.

3.      Upon information and belief, Defendants, Cigna Group Insurance and Life Insurance Company of North America (hereinafter referred to as **"Defendants"**), are Pennsylvania

corporations, with a principal place of business in the Commonwealth of Pennsylvania and licensed to conduct insurance business in the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

4.      Upon information and belief, said disability insurance policy existed within the meaning of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§1001 et seq., and this Court has jurisdiction pursuant to 29 U.S.C. §1132.

## FACTUAL BACKGROUND AND CLAIMS FOR RELIEF

### COUNT I
### PROCEEDS PAYABLE UNDER 29 U.S.C. §1132

5.      At all times material hereto, Defendants issued to Plaintiff a long-term disability (LTD) insurance policy under Plan/Policy No.: LK0008348.

6.      Plaintiff complied with all conditions of said policy and all premiums have been paid.

7.      On or about April 2, 2013, Plaintiff discontinued working as a systems engineer as a result of depressive disorder.

8.      Plaintiff timely applied for long-term disability benefits, which was denied by Defendants citing that Plaintiff's claim could not be evaluated due to a lack of medical information on file.

9.      Plaintiff timely appealed Defendants' October 17, 2013 denial for long term disability benefits, which sought benefits at a result of diagnoses including anxiety, depression, chronic pain, migraines, and neck pain.

10.     By letter dated October 20, 2015, Defendants determined that the medical information in file demonstrated that post-traumatic strain disorder and major depressive disorder, recurrent, precluded Plaintiff from performing her occupation as a systems engineer from October 1, 2013 through September 30, 2015.  See Exhibit "A."

11.     Defendants advised Plaintiff that she had the right to appeal their October 20, 2015 determination by providing medical documentation showing a physical disability from October 1, 2015 and ongoing.  See Exhibit "A."

12.     Plaintiff timely filed an appeal to Defendants' October 20, 2015 determination and provide medical documentation evidencing Plaintiff's physical disability from October 1, 2015 and ongoing, including but not limited to the following diagnoses:  C5-6 post-surgical changes with anatomical distortion, disc bulge causing compression at the thecal sac at C4-5, progressive myelopathy, and migraine headaches.

13.     Defendants ultimately agreed to an extension until July 29, 2016 for Plaintiff to provide additional relevant information to consider.

14.     On September 19, 2016, Defendants determined Plaintiff to not be disabled.  In support thereof, Defendants cited their unnamed medical reviewer who opined the medical file revealed potential work restrictions, and unnamed personnel from its vocational department which conducted a transferable skills analysis demonstrating available work for Plaintiff.  See Exhibit "B."

15.     Defendant's September 19, 2016 letter further advised Plaintiff she had the right to a second appeal within one hundred eighty (180) days.  See Exhibit "B."

16.     Accordingly, this Court placed the within matter on deferred status for Plaintiff to exhaust her administrative remedies.  See Exhibit "C."

17.     On March 15, 2017, within the one-hundred eighty (180) day appeal period, Plaintiff submitted a second appeal to Defendant alleging error in its September 19, 2016 decision.   See Exhibit "D."

18.     In particular, Plaintiff provided additional medical and vocational evidence in support of her second appeal and notified Defendant that it was not entitled to "assumed credits" it took pursuant to its October 20, 2015 determination.  See Exhibit "D."

19.     Defendant acknowledged Plaintiff's second appeal by letter dated March 24, 2017 and granted thirty (30) days to provide supplemental information.  See Exhibit "E."

20.     On March 22, 2017, Plaintiff provided to Defendant supplemental material in support of her second appeal.

21.     On March 28, 2017, Plaintiff again notified Defendant that Defendant erred to have taken "assumed credits" for receipt of social security benefits that she did not in fact receive and that Plaintiff would provide an executed Reimbursement Agreement (pursuant to terms of Policy) upon request.  See Exhibit "F."  Defendant did not respond to Plaintiff's March 28, 2017 letter.

22.     On April 24, 2017, Defendant granted thirty (30) days to provide additional information, and any information received subsequent to May 23, 2017 would be considered late. See Exhibit "G."

23.     On May 23, 2017, Plaintiff provided to Defendant a supplement to her second appeal advising Defendant that the Social Security Administration denied her application for Supplemental Security Income disability benefits.

24.     Pursuant to 29 U.S.C. §1133 and 29 C.F.R. §2560.503-1(f)(3), Defendant was obligated to render a decision to Plaintiff's appeal within forty-five (45) days.

25.     On August 3, 2017, Plaintiff notified Defendant that no decision was rendered, and that Defendant was under the legal obligation to pay long-term disability benefits as requested.  See Exhibit "H."

26.     In clear contradiction to the documents submitted, on August 15, 2017, Defendant responded by intimating that no second appeal was filed within one hundred eighty (180) days and denied Plaintiff's claim for long-term disability benefits.  See Exhibit "I."

27.     By not rendering a decision of Plaintiff's appeal, Defendants failed to comply with 29 C.F.R. §2560-503-1(f)(3) and the subject long-term disability policy.

28.     Plaintiff exhausted all administrative remedies, granting Plaintiff the right to bring this action.

**WHEREFORE**, Plaintiff, Helen Manning demands judgment against Defendants in the amount of $2,531.00 per month in "assumed credits" from October 1, 2013 through September 30, 2015 as per its October 20, 2015 Decision and in the amount of $5,000.00 per month as of October 1, 2015 and into the future representing long-term disability benefits.

### COUNT II
### VIOLATION OF 29 U.S.C.§1132(c)

29.     Paragraphs one (1) through twenty-eight (28) above are incorporated herein by reference as though fully set forth at length.

30.     On August 30, 2017, Plaintiff requested the Defendant provide to her copies of the long-term disability policy and all claims materials including but not limited to electronic records, communications, correspondence and appeals.  See Exhibit "J."

31.     29 U.S.C.A. §1132(c) states as follows:

> "who failed to comply with a request for any information
> which such administrator is required by this subchapter to
> furnish to a participant or beneficiary (unless such failure
> or refusal results from matters reasonably beyond the
> control of the administrator) by mailing the material
> requested to the last known address of the requesting
> participant or beneficiary within 30 days after such request
> may in the court's discretion by personally liable to such
> participant or beneficiary in the amount of up to $100 a day
> from the date of such failure or refusal, and the court may in its
> discretion order such other relief as it deems proper.

32.     To date, Defendant has failed to supply Plaintiff with the subject requested material in violation of 29 U.S.C.A §1132(c).

**WHEREFORE**, Plaintiff demands judgment against Defendants in the amount of $100.00 per day commencing September 30, 2017 through October 18, 2017 and such other relief the Court deems proper.

### COUNT III
### ATTORNEY'S FEES

33.     Paragraphs one (1) through thirty-two (32) above are incorporated herein by reference as though fully set forth at length.

34.     Under the express terms of ERISA, Plaintiff is entitled to recover all of her reasonable attorney's fees incurred in prosecution of her claim.

**WHEREFORE**, Plaintiff, Helen Manning demands judgment against Defendants in the amount of $2,531.00 per month in "assumed credits" from October 1, 2013 through September 30, 2015 as per its October 20, 2015 Decision and in the amount of $5,000.00 per month as of October

1, 2015 and into the future representing long-term disability benefits.

                              **BEZARK LERNER & DeVIRGILIS, P.C.**

BY: _____

                              STUART A. WINEGRAD, ESQUIRE
                              1600 Market Street, Suite 1610
                              Philadelphia, PA   19103
                              215-735-5599
                              *Attorney for Plaintiff, Helen Manning*

DATE:  March 19, 2018

## IN THE UNITED STATED DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HELEN MANNING | : | |
| | : | |
| v. | : | |
| | : | |
| CIGNA GROUP INSURANCE | : | NO.: 2:16-cv-05451 |
| | : | |
| AND | : | |
| | : | |
| LIFE INSURANCE COMPANY OF NORTH AMERICA | : | |

### CERTIFICATE OF SERVICE

I, Stuart A. Winegrad, Esquire, do hereby certify that this 19th day of **March 2018**, a true and correct copy of Plaintiff's First Amended Complaint was e-filed of record with the Court and received by counsel of record via the Court's electronic filing system and U.S. First Class Mail, postage prepaid, to the following:

James A. Keller, Esquire
Saul Ewing Arnstein & Lehr, LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
*Attorney for Defendants, Cigna Group Insurance and*
*Life Insurance Company of North America*

**BEZARK LERNER & DeVIRGILIS, P.C.**

BY: _____
STUART A. WINEGRAD, ESQUIRE
1600 Market Street, Suite 1610
Philadelphia, PA 19103
215-735-5599
*Attorney for Plaintiff, Helen Manning*

# EXHIBIT "A"

*Justin Randolf*
*CIGNA Group Insurance*
629
Disability Management Solutions
P.O. Box 709015
Dallas, TX 75370-9015

Phone: 800-352-0611 ext. 5548
Fax: 855-813-4365
www.mycigna.com



**CIGNA Group Insurance**
Life · Accident · Disability

MR. STUART A. WINEGRAD
BEZARK LERNER & DE VIRGILIS, P.C.
1600 MARKET ST
SUITE 1610
PHILADELPHIA, PA 19103

October 20, 2015

Name:                           HELEN MANNING
Incident Number:                3056849
Plan/Policy Number:             LK0008348
Plan/Policy Holder:             LOCKHEED MARTIN CORP
Underwriting Company:           Life Insurance Company of North America

DEAR MR. WINEGRAD,

This letter is regarding your client HELEN MANNING's Long Term Disability (LTD) claim.

Please refer to the following LTD policy provisions below:

Definition of Disability/Disabled:
*"The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:*
*1. unable to perform each and every material duty of his or her Regular Occupation; and*
*2. unable to earn 80% or more of his or her Indexed Earnings from working in his or Regular Occupation.*

*After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:*
*1. unable to perform each and every material duty of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and*
*2. unable to earn 80% or more of his or her Indexed Earnings.*

*The Insurance Company will require proof of earnings and continued Disability."*

Mental Illness, Alcoholism and Drug Abuse Limitation:
*"The Insurance Company will pay Monthly Benefits on a limited basis for a Disability caused by, or contributed to by, any one or more of the following conditions. Once 24 Monthly Benefits have been paid, no further benefits will be payable for any of the following conditions.*

*1. Alcoholism*
*2. Anxiety disorders*
*3. Delusional (paranoid) disorders*
*4. Depressive disorders*
*5. Drug addiction or abuse*
*6. Eating disorders*
*7. Mental Illness*

CIGNA Group Insurance is a registered service mark of CIGNA Intellectual Property, Inc., licensed for use by insurance company subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York and Connecticut General Life Insurance Company. Products and services are provided by these insurance company subsidiaries and not by CIGNA Corporation.

October 20, 2015
Page 2

*8. Somatoform disorders (psychosomatic illness)*

*If, before reaching the lifetime maximum benefit, an Employee is confined in a hospital for more than 14 consecutive days, that period of confinement will not count against the lifetime maximum benefit. The confinement must be for the care or treatment of any of the conditions listed above."*

Termination of Disability Benefits:
*"Disability Benefits will end on the earliest of the following dates.*
*1. The date an Employee earns more than 80% or his or her Covered Earnings*
*2. The date an Employee returns to Active Service*
*3. The date the Insurance Company determines an Employee is not Disabled*
*4. The end of the Maximum Benefit Period*
*5. The date an Employee dies"*

According to the medical information on file, as of October 1, 2013, the disabling conditions precluding Ms. Manning from performing her occupation as a Systems Engineer were Post Traumatic Stress Disorder and Major Depressive Disorder, recurrent. The medical information on file does not support a disability of a physical nature and we have not received any additional information from you or Ms. Manning that indicates otherwise.

This information includes:

-- Letter from Jilda S. Green, Ph.D, RN dated December 6, 2014.
-- Behavioral Health Questionnaire and Medical Request Form from Jilda S. Green, Ph.D, RN dated December 30, 2014.
-- Medical records from Maria Mazzotti, DO dated January 14, 2015.
-- Medical records from Venkatesh Sundararajan, MD dated February 9, 2015.
-- Medical records from Jilda S. Green, Ph.D, RN dated February 25, 2015.
-- Medical records from Sudha Jairaj, MD dated March 25, 2015.
-- Medical Request Form from PennCare at Rittenhouse dated March 26, 2015.
-- Letter and Medical Request Form from Maria Mazzotti, DO dated March 26, 2015.
-- Behavioral Health Questionnaire and Medical Request Form from Sudha Jairaj, MD dated March 30, 2015.

As of September 30, 2015, Ms. Manning will have received the maximum benefits payable according to this limitation. On October 20, 2015, a payment in the amount of $61,362.84 was issued to your office, representing LTD benefits payable from October 1, 2013 through the benefit term date of September 30, 2015.

Ms. Manning's LTD claim has been closed and no further benefits are payable. Please understand we are not saying an ongoing disability does not exist, but that Ms. Manning has reached the policy's limitation for benefits resulting from her disability.

<u>What If You Don't Agree With The Claim Decision?</u>

If you disagree with our determination and wish to have it reviewed, please follow the steps described below.

Based on the information provided by your Employer, your claim is governed by the Employee Retirement Income Security Act of 1974, Public Law 93-406 (ERISA). ERISA requires that you go through the Company's administrative appeal review process prior to pursuing any legal action challenging our claim determination.

Here's how to submit your administrative appeal review request:

-- Submit your appeal letter to us within 180 days of your receipt of this letter.
-- Your appeal letter should be sent to the Life Insurance Company of North America representative signing this letter to the address noted on the letterhead.
-- Your appeal letter may include written comments as well as any new information you may have.
-- You may also submit additional information. Additional information may include, but is not limited to: medical records from Ms. Manning's doctor(s) and/or hospital, test result reports, therapy notes, etc. These medical records should cover the period of October 1, 2015 through the present date.

October 20, 2015
Page 3

In addition, you may also wish to have Ms. Manning's treating provider(s) submit some or all of the following information:

-- Copies of updated diagnostic test results that document a degree of severity in Ms. Manning's condition sufficient to render her unable to perform the duties of her regular occupation or any occupation. Please include any copies of recent test results performed within the last six months.
-- Specific restrictions and limitations that preclude Ms. Manning from performing the duties of her regular occupation or any occupation. What specific job functions, activities of daily living, and social/recreational activities is she incapable of performing?
-- A discussion by Ms. Manning's treating provider(s) of the medical evidence indicating she is unable to perform the duties of her regular occupation or any occupation. What are the current data sources used to make these determinations?
-- A discussion by your treating provider(s) describing Ms. Manning's current and future treatment plan(s). What are the problems of treatment? What are the treatment goals, both objective and measurable? What are the treatment strategies for each goal? How does the treatment plan address Ms. Manning's return to work?

You have the right to bring a legal action for benefits under the Employee Retirement Income Security Act of 1974 (ERISA) section 502(a) following an adverse benefit determination on appeal.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein. Should you have any information which would prove contrary to our findings, please submit it to us. We will be pleased to review any information you may wish to submit.

Please be aware that you are entitled to receive, upon request and free of charge, information relevant to your claim for benefits.

Please contact our office at 800-352-0611 ext. 5548 should you have any questions.

Sincerely,

*Justin Randolf*

Justin Randolf
Team Leader


cc:     MS. HELEN MANNING

# Long Term Disability Benefit Statement

**CIGNA**
Group Insurance

**Computation Method: Direct Offset**

| Claimant Name: | Helen Manning | Policy Holder: | Lockheed Martin Corp. |
| Social Security#: | | Policy #: | LK 8348 |

## Benefit Levels for this case:

| | | | |
|---|---|---|---|
| Basic %: | 60.000% | Maximum: $ | $30,000.00 |
| Basic Monthly Earnings: | $8,416.67 | Minimum: $ | $200.00 |
| Employee Contribution %: | 100.000% | | |
| Requested Monthly FIT deduction: | | | |

☑ Round Gross Benefit
☐ Mandatory FIT Withholding

## Other Benefits Information:

| Other Benefit: | From | Through | Monthly Amount | |
|---|---|---|---|---|
| Social Security Disability ▼ | 10/1/2013 | 99/99/9999 | $2,531.00 | ☑ Amount estimated |
| ▼ | | | | ☐ Amount estimated |
| ▼ | | | | ☐ Amount estimated |
| ▼ | | | | ☐ Amount estimated |

## Payment Dates:

| | | |
|---|---|---|
| Date of Disability: | 4/2/2013 | |
| Benefit Waiting Period: | 180 | Days ▼ |
| RTW days during BWP: | | |

| | Pay from | Pay through | Check Issue Date |
|---|---|---|---|
| Benefit Start Date: | 10/1/2013 | 9/30/2014 | 10/20/15 |

FICA End Date
10/31/2013

| Length of Payment Period : | Months | 12 | | |
|---|---|---|---|---|
| | Days | 0 | Total Payable | $30,228.00 |

## Payment Summary:

| | From | Through | | Amount |
|---|---|---|---|---|
| 1st Period | 10/1/2013 | 10/31/2013 | 1 month | $2,519.00 |
| 2nd Period | 11/1/2013 | 11/30/2013 | 1 month | $2,519.00 |
| 3rd Period | 12/1/2013 | 12/31/2013 | 1 month | $2,519.00 |
| 4th Period | 1/1/2014 | 1/31/2014 | 1 month | $2,519.00 |
| 5th Period | 2/1/2014 | 2/28/2014 | 1 month | $2,519.00 |
| 6th Period | 3/1/2014 | 3/31/2014 | 1 month | $2,519.00 |
| 7th Period | 4/1/2014 | 4/30/2014 | 1 month | $2,519.00 |
| 8th Period | 5/1/2014 | 5/31/2014 | 1 month | $2,519.00 |
| 9th Period | 6/1/2014 | 6/30/2014 | 1 month | $2,519.00 |
| 10th Period | 7/1/2014 | 7/31/2014 | 1 month | $2,519.00 |
| 11th Period | 8/1/2014 | 8/31/2014 | 1 month | $2,519.00 |
| 12th Period | 9/1/2014 | 9/30/2014 | 1 month | $2,519.00 |

# CIGNA
Group Insurance

## Long Term Disability Benefit Statement

**Computation Method:** Direct Offset

| | |
|---|---|
| Claimant Name: | Helen Manning |
| Social Security#: | COLA effective 1/1/2015 |

| | |
|---|---|
| Policy Holder: | Lockheed Martin Corp. |
| Policy #: | LK 8348 |

### Benefit Levels for this case:

| | | | | |
|---|---|---|---|---|
| Basic %: | 100.000% | Maximum: $ | $30,000.00 | ☐ Round Gross Benefit |
| Basic Monthly Earnings: | $2,594.57 | Minimum: $ | $200.00 | ☐ Mandatory FIT Withholding |
| Employee Contribution %: | 100.000% | | | |
| Requested Monthly FIT deduction: | | | | |

### Other Benefits Information:

| Other Benefit: | From | Through | Monthly Amount | |
|---|---|---|---|---|
| | | | | ☐ Amount estimated |
| | | | | ☐ Amount estimated |
| | | | | ☐ Amount estimated |
| | | | | ☐ Amount estimated |

### Payment Dates:

| | |
|---|---|
| Date of Disability: | 4/2/2013 |
| Benefit Waiting Period: | 180  Days |
| RTW days during BWP: | |

| | Pay from | Pay through | Check Issue Date |
|---|---|---|---|
| Benefit Start Date: | 10/1/2014 | 9/30/2015 | 10/20/15 |

**FICA End Date** 10/31/2013

| | | | |
|---|---|---|---|
| Length of Payment Period : | Months | 12 | |
| | Days | 0 | Total Payable  **$31,134.84** |

### Payment Summary:

| | From | Through | | Amount |
|---|---|---|---|---|
| 1st Period | 10/1/2014 | 10/31/2014 | 1 month | $2,594.57 |
| 2nd Period | 11/1/2014 | 11/30/2014 | 1 month | $2,594.57 |
| 3rd Period | 12/1/2014 | 12/31/2014 | 1 month | $2,594.57 |
| 4th Period | 1/1/2015 | 1/31/2015 | 1 month | $2,594.57 |
| 5th Period | 2/1/2015 | 2/28/2015 | 1 month | $2,594.57 |
| 6th Period | 3/1/2015 | 3/31/2015 | 1 month | $2,594.57 |
| 7th Period | 4/1/2015 | 4/30/2015 | 1 month | $2,594.57 |
| 8th Period | 5/1/2015 | 5/31/2015 | 1 month | $2,594.57 |
| 9th Period | 6/1/2015 | 6/30/2015 | 1 month | $2,594.57 |
| 10th Period | 7/1/2015 | 7/31/2015 | 1 month | $2,594.57 |
| 11th Period | 8/1/2015 | 8/31/2015 | 1 month | $2,594.57 |
| 12th Period | 9/1/2015 | 9/30/2015 | 1 month | $2,594.57 |

# EXHIBIT "B"

*Angela A.*
*CIGNA Group Insurance*
PO Box 29063
Glendale, CA 91209

Phone: 800-781-2006 ext. 5465307
Fax: 866-517-9873

www.mycigna.com



**CIGNA Group Insurance**
Life · Accident · Disability

MR. STUART A. WINEGRAD
BEZARK LERNER & DE VIRGILIS, P.C.
1600 MARKET ST
SUITE 1610
PHILADELPHIA, PA 19103

September 19, 2016

| | |
|---|---|
| Name: | HELEN MANNING |
| Incident Number: | 3056849 |
| Plan/Policy Number: | LK0008348 |
| Plan/Policy Holder: | LOCKHEED MARTIN CORP HEALTH & WELLNESS |
| Underwriting Company: | Life Insurance Company of North America |

DEAR MR. WINEGRAD,

This letter is about your client's appeal for Long Term Disability (LTD) benefits under the above mentioned policy. We have separated this letter into subject headings for your ease of reference.

<u>What is the Outcome of the Appeal Review?</u>

After completing our review of your client's claim, we are unable to continue paying benefits beyond September 30, 2015.

<u>What Provisions of the Disability Policy Apply to the Decision on Your Client's Claim?</u>

According to your client's Employer's Policy:
*"The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:*
*1. unable to perform each and every material duty of his or her Regular Occupation; and*
*2. unable to earn 80% or more of his or her Indexed Earnings from working in his or Regular Occupation.*

*After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:*
*1. unable to perform each and every material duty of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and*
*2. unable to earn 80% or more of his or her Indexed Earnings.*

*The Insurance Company will require proof of earnings and continued Disability."*

*Mental Illness, Alcoholism and Drug Abuse Limitation:*
*"The Insurance Company will pay Monthly Benefits on a limited basis for a Disability caused by, or contributed to by, any one or more of the following conditions. Once 24 Monthly Benefits have been paid, no further benefits will be payable for any of the following conditions.*
*1. Alcoholism*
*2. Anxiety disorders*

CIGNA Group Insurance is a registered service mark of CIGNA Intellectual Property, Inc., licensed for use by insurance company subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York and Connecticut General Life Insurance Company. Products and services are provided by these insurance company subsidiaries and not by CIGNA Corporation.

September 19, 2016
Page 2

*3. Delusional (paranoid) disorders*
*4. Depressive disorders*
*5. Drug addiction or abuse*
*6. Eating disorders*
*7. Mental Illness*
*8. Somatoform disorders (psychosomatic illness)*

*If, before reaching the lifetime maximum benefit, an Employee is confined in a hospital for more than 14 consecutive days, that period of confinement will not count against the lifetime maximum benefit. The confinement must be for the care or treatment of any of the conditions listed above."*

Our records show that at the time Ms. Manning ceased working on April 2, 2013 she was employed with LOCKHEED MARTIN CORP HEALTH & WELLNESS as a SYSTEMS ENGINEER SR. Your client's occupation required Sedentary demand activities according to the Dictionary of Occupational Titles (DOT).

Sedentary- Exerting up to 10 pounds of force occasionally or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are Sedentary if walking and standing are required only occasionally and all other Sedentary criteria are met.

Under the terms of the policy, the Benefit Waiting Period is 180 days. Your client's benefit waiting period began on April 2, 2013 and ended on September 30, 2013 therefore your client's benefit start date would have been October 1, 2013.

<u>What Information Was Reviewed?</u>

Your client's complete file, including any additional information you submitted, was reviewed in its entirety without deference to prior reviews.

<u>How Was the Appeal Decision Reached?</u>

The clinical information within your client's claim file was reviewed by an independent physician, Board Certified in Neurology and Psychology and added Board Certification in Pain Medicine.

The medical reviewer opined that from a neurology perspective, the available medical records did support physical functional limitation from September 30, 2015 and continuing. This would include that due to Ms. Manning's resultant pain and deltoid weakness with her history of documented degeneration involving the cervical spine and postsurgical changes, the following work activity restrictions were indicated: no lift, push, pull, or carry more than 10 pounds on an occasional basis. She can sit with ability to reposition. She can stand and walk up to 10 minutes at a time up to one hour each per day. She can occasionally bend, stoop, crouch and crawl. She was recommended to avoid operating from unprotected heights or operating heavy or dangerous equipment, or climbing ladders while being on chronic opioids.

Additionally our Vocational Rehabilitation department conducted a Transferable Skill Analysis taking into consideration the aforementioned restrictions and limitation, education, training and experience for Ms. Manning.

Occupations Ms. Manning can perform in the labor market of Ambler, PA include but are not limited to the following:

| DOT code | Occupation | Strength Level | Annual Wage Requirement |
|---|---|---|---|
| *033.167-010 | Computer Systems Engineer | S | $86,760 |
| 033.362-010 | Computer Security Specialist | S | $81,930 |

(*Ms. Manning's own occupation)

Based on the aforementioned reviews your client will not remain disabled from any occupation and her LTD claim remains closed.

<u>What if You Do Not Agree with the Appeal Decision?</u>

September 19, 2016
Page 3

If you disagree with our determination and wish to have it reviewed, please follow the steps described below.

Based on the information provided by your client's Employer, her claim is governed by the Employee Retirement Income Security Act of 1974, Public Law 93-406 (ERISA).

A second appeal request is not required but will be accepted if you have different or additional information to submit. Here is how to submit a second appeal review.
-- Submit your appeal letter to us within 180 days of your receipt of this letter.
-- Your appeal letter should be sent to the Life Insurance Company of North America representative signing this letter to the address noted on the letterhead.
-- Your appeal letter may include written comments as well as any new information you may have.
-- You may also submit additional information. Additional information may include, but is not limited to: medical records from your client's doctor and/or hospital, test result reports, therapy notes, etc. These medical records should cover the period of January 2016 through present/current.

Under normal circumstances, you will be notified of a decision on your appeal within 45 days of the date your request for review is received. If there are special circumstances requiring delay, you will be notified of the reason for delay within 30 days of receipt of your request, and every 30 days thereafter.

You have the right to bring a legal action for benefits under the Employee Retirement Income Security Act of 1974 (ERISA) section 502(a) following an adverse benefit determination on appeal. Your client and her plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local United States Department of Labor Office or your State Insurance Regulatory Agency.

<u>Please be advised that the Policy under which your client is insured states the following:</u>

**Legal Actions**
*"No action at law or in equity may be brought to recover benefits under the Policy less than 60 days after written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, has been furnished as required by the Policy. No such action shall be brought more than 3 years after the time satisfactory proof of loss is required to be furnished."*

**Time Limitations**
*"If any time limit stated in the Policy for giving notice of claim or proof of loss, or for bringing any action at law or in equity, is less than that permitted by the law of the state in which the Employee lives when the Policy is issued, then the time limit provided in the Policy is extended to agree with the minimum permitted by the law of that state."*

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein.

Please be aware that you are entitled to receive, upon written request and free of charge, information relevant to your client's claim for benefits.

Please contact our office at 800-781-2006 ext. 5465307 should you have any questions.

Sincerely,

*Angela A.*

Angela A.
Appeal Specialist

## IN THE UNITED STATED DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HELEN MANNING | : |
| | : |
| v. | : |
| | : NO.: 2:16-cv-5451-RK |
| | : |
| LIFE INSURANCE COMPANY OF NORTH AMERICA | : |

### ORDER

**AND NOW**, this _1st_ day of _Jan._, 2017, upon consideration of

Plaintiff, Helen Manning's Uncontested Motion to Stay Proceedings;

**IT IS** hereby **ORDERED** and **DECREED** that Plaintiff's Motion is **GRANTED.**


_Robert F. Kelly_
                                                          J.

# EXHIBIT "D"



ATTORNEYS AT LAW

## BEZARK LERNER & DE VIRGILIS PC

BRIAN R. BEZARK
ERIC I. LERNER
JOHN DEVIRGILIS
STUART A. WINEGRAD*

*ALSO MEMBER NJ BAR

March 15, 2017

BRUCE W. MILLER
OF COUNSEL

Direct e-mail: swinegrad@bldvlaw.com

*<u>Via Facsimile Only (866-517-9873)</u>*
Ms. Angela Akopyan
CIGNA Group Insurance
P.O. Box 29063
Glendale, CA 91209

      **RE:**    **Our Client/Claimant: Helen Manning**
                **Your Incident No.: 3056849**
                **Plan/Policy Number: LK0008348**
                <u>**Plan/Policy Holder: Lockheed Martin Corp.**</u>

Dear Ms, Akopyan:

      As you know, this office represents Ms. Helen Manning in connection with the above referenced claim for disability benefits. Please allow this letter to serve as Ms. Manning's second appeal to your Decision communicated by letter dated September 19, 2016.

      Enclosed with this Appeal are the following additional materials:

      1)    Office note of Elliot Wallack, M.D. of 2/14/17;
      2)    Physician's Statement dated 3/3/17 authored by Elliot Wallack, M.D.;
      3)    Narrative report of Elliot Wallack, M.D. dated 3/8/17;
      4)    Physician's Statement dated 3/8/17 authored by Maria Mazzotti, D.O.;
      5)    Narrative report of Maria Mazzotti, D.O. dated 3/8/17; and
      6)    Vocational Economic report of Andrew L. Gluck, M.A.. M.Ed., M.S., Ed.D dated 3/9/17.

      Your Decision of September 19, 2016 is in error based on the enclosed materials and the materials submitted prior to your September 19, 2016 Decision. I will discuss the evidence establishing Ms. Manning right to receive LTD benefits, and CIGNA's errors in turn:

---

BEZARK LERNER & DE VIRGILIS ᴘᴄ

RE:    *Our Client/Claimant: Helen Manning*                    *March 15, 2017*
       *Your Incident No.: 3056849*
       - *Page 2 -*

I.    <u>**Ms. Manning has shown she is entitled to LTD as of 9/30/2015 and ongoing**</u>

      Dr. Elliot Wallack, a well-respected neurologist from Penn Medicine, clearly opined that Ms. Manning is physically disabled. Dr. Wallack opined on CIGNA's Disability Medical

Request Form dated 3/25/15 that Ms. Manning suffers from cervical myelopathy. Dr. Wallack's office note of 3/31/15 reflects that Ms. Manning suffers from chronic neck pain and is status post-cervical spine surgery. Dr. Wallack referred to an MRI administered on 2/11/15 demonstrating a C5-6 metal artifact with spinal cord flattening as well as a C4-5 prominent disc bulge compressing the ventral surface of the thecal sac.

      Dr. Wallack completed a Physician's Statement on April 5, 2016, which clearly established that Ms. Manning cannot return to work and suffers from continued neck pain with objective findings of disorders of her reflexes and tone. Dr. Wallack's February 14, 2017 office note reiterates that Ms. Manning should be "definitely considered disabled." Dr. Wallack's Physician Statement lists dates of examination through 2016 into 2017 evidencing that she exhibits myelopathic findings on physical examinations, and she should not return to work until further notice. Dr. Wallack opined in his narrative of March 8, 2017 that she is incapable of even sedentary computer sit down work, with complaints and findings consistent since 2013.

      Further, Dr. Maria Mazzotti, a well-known and respected family practitioner, opined on CIGNA's Disability Medical Request Form dated 3/26/15 and her narrative of 3/26/15 that Ms. Manning is physically disabled from work. Dr. Mazzotti completed a Physician's Statement of Disability dated March 8, 2017 opining that Ms. Manning is disabled due to chronic neck, upper extremity and lower back pain. Dr. Mazzotti opined that Ms. Manning is unable to perform repetitive activities for more than one hour per day. Dr. Mazzotti's March 8, 2017 narrative report details refers to an EMG study confirming that repetitive activities, including using a computer, would lead to significant aggravation.

      Dr. Andrew Gluck performed a comprehensive vocational analysis. Based on the medical records and his interview of Ms. Manning, Is Ms. Manning unable to perform each and every material duty of any occupation for which she is, or may reasonable become qualified based on education, training and experience and she is unable to earn 80% or more of her Indexed earnings. Dr. Gluck pointed out that the transferrable skills analysis of Paul Wilson is flawed. One, Mr. Wilson fails to account for the fact that the positions require repetitive upper extremity movement, for which diagnostic testing confirms she is unable to perform. Further, Dr. Gluck is personally familiar with the Computer Security Specialist position, and personally knows that the physical requirements of the position exceed those stated by Dr. Brock. A copy of Dr. Gluck's curriculum vitae is enclosed for your review.

BEZARK LERNER & DE VIRGILIS pc

RE:    *Our Client/Claimant:  Helen Manning*                          *March 15, 2017*
         *Your Incident No.:  3056849*
         -    *Page 3 –*


     Ms. Manning incorporates the records supplied in her prior appeals and incorporates those materials obtained by CIGNA in Ms. Manning's prior applications for benefits.  Please advise me if you need additional copies and I will be happy to supply them to you.


**II.    CIGNA is not entitled to an "assumed credit" as of 10/1/2013**

     In addition, Ms. Manning has not received Social Security Disability Benefits, although she has made application to the Social Security Administration.  As such, CIGNA is not entitled to an "assumed credit" when it issued payment to Ms. Manning on October 20, 2015 which was payable from 10/1/2013 through 9/30/2015.  Accordingly, CIGNA must immediately issue payment to Ms. Manning for the month assumed credits it received in the amount of $2,531.00 from 10/1/2013 through 9/30/2015. Ms. Manning will provide to you an executed Reimbursement Agreement upon request.

     Ms. Manning reserves the right to supplement this appeal with additional medical records, vocational assessments, and Social Security Administration Decisions, and Reimbursement Agreement as they become available.

     Please contact me with any questions or concerns.


Very truly yours,

STUART A. WINEGRAD

SAW/rr
Encl.

Mar. 3, 2017 2:06PM (Chart # 442302261) DOB: 09/10/1980                    Encounter Date 02/14/2017 No. 0805 P. 1

Letter by Wallack, Eliot Michael, MD on 2/28/2017

Ⓟ Penn Medicine

**Penn Specialty Care at Rittenhouse - Neurology**

Rittenhouse                                                    **Eliot M. Wallack, MD**

**NEUROLOGIC CONSULTATION AND EVALUATION NOTE**

NAME: Manning, Helen
DOB: 09/10/1980
MR#: 442302261
DATE OF VISIT: February 14, 2017
REFERRING PHYSICIAN:

Helen Manning was seen in neurologic follow-up on February 14, 2017. She is followed in our office with the diagnoses of:

1. Recurrent migraine headaches.
2. Chronic left neck pain, left low back pain, left-sided pain, status post cervical spine disc replacement in May 2011.
3. Depression.
4. Irregular periods.
5. Polycystic ovarian syndrome.
6. Chronic narcotic pain medication use, resolved.
7. Recurrent head trauma.
8. Posttraumatic stress disorder.
9. Increased CPK of undetermined nature.

Neurologically, the patient appears as not doing particularly well. She continues to complain of left-sided body pain radiating from the left posterior cervical region down the left shoulder into the left flank, left buttock, and left leg. She also notes some slight pain affecting the right foot, possibly consistent with tendinitis. She evidently fell in her bathroom injuring her left flank. She is resting poorly at night. She feels Ambien 0.5 mg extended release q.h.s. has been helpful in relieving her pain to a certain extent. Physical therapy and salon patches have not been particularly effective. She continues to have migraines and notes a history of 15 migraines per month for 3 months. She is using Imitrex with a fair response.

MEDICATIONS:

Mar. 3. 2017  2:06PM  Wallack, Helen (MRN # 442302261) DOB: 09/10/1980          Encount No. 0805 02/14 2017

The patient's medications include Zyrtec, Remeron 15 mg q.h.s., Pristiq 100 mg q.a.m., Lexapro 10 mg q.a.m., Xanax 2 mg q.h.s., ibuprofen 600 mg 3 times a day, and birth control pills.

She is living with a family in South Carolina.

Re-examination of the patient revealed depressed-appearing woman, whose blood pressure was 140/110, although taken by the medical assistant at 154/56. Lower and upper extremity strength was unremarkable. There was limitation of movement of the neck. She is hyperreflexic at both knees at +3/+4. Toes were downgoing. No definitive changes in tone in the lower or upper extremities. She appeared in significant distress and had a slightly antalgic gait.

DISCUSSION:
Neurologically, the patient continues to have left-sided pain which is persistent. Due to the diagnosis of chronic migraine, Botox has been suggested. Additional injections into the left sternocleidomastoid muscle may be helpful in relieving some of the patient's left-sided pain. We would like to limit some of her psychiatric medications if at all possible at Dr. Lewis' discretion. Follow-up is planned in 6 weeks in our office. CPK has been reordered. The patient should be definitely considered disabled.

Administratively entered from dictation on behalf of:

Eliot M. Wallack, M.D.

EMW: modl 067233/731310744, D: 02/14/2017 11:42:27, T: 02/14/2017 12:03:00

Tuttleman Center | 2nd Floor | 1840 South Street | Philadelphia, PA 19146

215.893.6200 | FAX: 215.893.6229

PennChart

Mar. 3. 2017  2:06PM                                   No. 0805  P. 6

> **FRAUD WARNING:** Any person who, knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or (2) conceals for the purpose of misleading, information concerning any material fact thereto, commits a fraudulent insurance act. For residents of the following states, please see the last page of this form: *California, Colorado, District of Columbia, Florida, Kentucky, Maryland, Minnesota, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Tennessee, Texas or Virginia.*

## PHYSICIAN'S STATEMENT OF DISABILITY (PLEASE PRINT)

Please complete all relevant sections as thoroughly as possible and include medical documentation to support your findings.
The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by the GINA Title II from requesting or requiring genetic information of employees or their family members. In order to comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. "Genetic Information," as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

### THIS SECTION IS TO BE COMPLETED BY THE PATIENT/INSURED

| NAME Helen Marie Manning | EMPLOYER NAME |
|---|---|
| ADDRESS | SOCIAL SECURITY NUMBER |
| CITY                 STATE              ZIP CODE | GROUP POLICY NUMBER |
| TELEPHONE     OCCUPATION | DATE OF BIRTH     9/10/1980 |

### THE REMAINING SECTIONS OF THIS FORM ARE TO BE COMPLETED BY YOUR PHYSICIAN(S)

**1. DIAGNOSIS (including any complications)**

(a) Diagnosis (include ICD-9 or DSM IV-TR Code)    ICD - 10

M47.12  +  G43.919

(b) Subjective symptoms   (L) sided pain, intractable

(c) Objective findings (Please attach copies of current X-rays, EKG's, Laboratory Data and any clinical findings as applicable)

Myelopathic findings on physical exam

(d) Are symptoms consistent with the clinical findings?  ☒ Yes  ☐ No, explain

(e) Is illness work related?  ☐ Yes  ☒ No    NA

(f) If pregnancy please indicate:  LMP:    EDC:    Actual Delivery:

**2. DATES OF TREATMENT**

(a) Date patient first visited you for this accident/illness:   4/30/13   *Month Day Year*

(b) Date patient first unable to work due to this accident/illness:   *Month Day Year*

(c) List frequency & date(s) patient was examined for this accident/illness:
5/13, 8/13, 3/15, 4/16, 5/16, 8/16, 11/16, 2/17

(d) Date of last visit:   2 14 17   *Month Day Year*

**3. NATURE OF TREATMENT (Including Surgery & Medications prescribed, if any)**

(a) Hospitalization on:   NA   *Month Day Year*    THROUGH   *Month Day Year*

(b) Surgery on:   NA   *Month Day Year*    Type of Surgery:

(c) Name and Address of Hospital

(d)

| Medications | Type | Dosage |
|---|---|---|
| Wellbutrin | | 150 gm q12° |
| Flexeril | | 20 mgm qd |
| Gabapentin | | 300 mgm q8° |
| Imitrex | | 100 gm prn |
| Ambien CR | | 12.5 gm q6°. |
| Botox | | to be started |

200 units ? 3m? m ??th

GB-50H066 Rev. 12/2012

Mar. 3. 2017  2:06PM                                    NNo. 0805  P.  1

**4. PHYSICAL LIMITATIONS / IF APPLICABLE:** In an 8-hour work day is your patient able to:

| | 0 hours | up to 2.5 hours | up to 5.5 hours | greater than 5.5 hours |
|---|---|---|---|---|
| Climb | ☒ | ☐ | ☐ | ☐ |
| Balance | ☒ | ☐ | ☐ | ☐ |
| Stoop | ☐ | ☒ | ☐ | ☐ |
| Kneel | ☐ | ☒ | ☐ | ☐ |
| Crouch | ☒ | ☐ | ☐ | ☐ |
| Crawl | ☒ | ☐ | ☐ | ☐ |
| Reach | ☒ | ☐ | ☐ | ☐ |
| Walk | ☐ | ☒ | ☐ | ☐ |
| Sit | ☐ | ☒ | ☐ | ☐ |
| Stand | ☒ | ☐ | ☐ | ☐ |

**Cardiac – If Applicable**
(American Heart Association)
☐ Class 1 – No Limitation
☐ Class 2 – Slight Limitation
☐ Class 3 – Marked Limitation
☐ Class 4 – Complete Limitation

Blood Pressure (last visit) _____

Please indicate the maximum level of ability (sedentary, light, medium, heavy) of your patient to:
_____ Lift  _____ Carry  _____ Push  _____ Pull

Sedentary = 10 lbs. maximum, walking occasionally.    Light = 20 lbs. maximum, 10 lbs. frequently
Medium = 50 lbs. maximum, 25 lbs. frequently, up to 10 lbs. constantly.    Heavy = 100 lbs. maximum, 50 lbs. frequently, 20 lbs. constantly.

**5. MENTAL IMPAIRMENT / IF APPLICABLE –** Please complete the following (Incomplete information will delay claim processing):

Axis I:  Depression Marked

Axis II:  PTSD

Axis III:  Myelopathy cervical

Axis IV:  ① sided body pain T: Chronic intractable

Axis V: Current GAF: _____  Highest GAF in past year: _____  Baseline: _____

Additional Comments:

**6. RETURN TO WORK STATUS**

When was patient able to go to work?

should not return until further notice

**Patient's Regular Occupation**
☒ Full-time  ___ / ___ / ___
☐ Part-time     Mo.  Day  Yr.

**Any Other Occupation**
☒ Full-time  ___ / ___ / ___
☐ Part-time     Mo.  Day  Yr.

**7. REMARKS**

Hx of ① sided pain, cervical myelopathy secondary to degenerative cervical spine disease.

Physician Name (Please Print):  Eliot Wallack

Degree & Specialty:  MD Neurology

Address: (Street, City, State, Zip Code)  1840 South St Phila PA 19146

Telephone Number:  215-843-0200

Federal Tax ID #:  232865181

Physician Signature:

Date:

GB-608066 Rev. 12/2012

# Penn Medicine

**Penn Specialty Care at Rittenhouse - Neurology**

Rittenhouse                                              **Eliot M. Wallack, MD**

March 8, 2017

Helen Manning (9 10 80) is followed in our office with signs and symptoms consistent with a chronic cervical myelopathy. We believe the patient is incapable of even sedentary computer sit-down work due to persistent pain and stiffness affecting the left side. Her complaints and findings have been consistent since she was first seen in our office in April 2013. Her CPK level has also remained high due to undetermined reasons.

Should further information be required we would be happy to provide it with the patient's approval.

Eliot Wallack, MD
Associate Professor of Clinical Neurology
University of Pennsylvania School of Medicine

Mar. 7. 2017  2:46PM                                   No. 6888    P. 3

**FRAUD WARNING:** Any person who, knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or (2) conceals for the purpose of misleading, information concerning any material fact thereto, commits a fraudulent insurance act. For residents of the following states, please see the last page of this form: *California, Colorado, District of Columbia, Florida, Kentucky, Maryland, Minnesota, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Tennessee, Texas or Virginia.*

### PHYSICIAN'S STATEMENT OF DISABILITY (PLEASE PRINT)

Please complete all relevant sections as thoroughly as possible and include medical documentation to support your findings.

The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by the GINA Title II from requesting or requiring genetic information of employees or their family members. In order to comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. "Genetic information," as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

#### THIS SECTION IS TO BE COMPLETED BY THE PATIENT/INSURED

| NAME Helen Myla Manning | EMPLOYER NAME |
|---|---|
| ADDRESS | SOCIAL SECURITY NUMBER |
| CITY          STATE          ZIP CODE | GROUP POLICY NUMBER |
| TELEPHONE      OCCUPATION | DATE OF BIRTH  9/10/1980 |

#### THE REMAINING SECTIONS OF THIS FORM ARE TO BE COMPLETED BY YOUR PHYSICIAN(S)

**1.** DIAGNOSIS (including any complications)

(a) Diagnosis (include ICD-9 or DSM IV-TR Code)  G35.03

Chronic Pain disorder 689.4  |  BIL Carpal Tunnel Syndrome

(b) Subjective symptoms  Neck pain extending to ℝ scapular area, sternocleidomastoid and Trapezious Lumbago, extending down ℝ lower ext., BIL arm weakness, ℝUE pain extending to hand + numbness

(c) Objective findings (Please attach copies of current X-rays, EKG's, Laboratory Data and any clinical findings as applicable). MRI Post surgical changes C5/6 ℝ the ventral aspect of canal + spinal cord  disc bulge C4-5  EMG from 2007 showed other C5-C6 Pathology  S1 radiculopathy

(d) Are symptoms consistent with the clinical findings?  ☑ Yes  ☐ No, explain

(e) Is illness work related?  ☐ Yes  ☑ No

(f) If pregnancy please indicate:    LMP:              EDC:              Actual Delivery:

**2.** DATES OF TREATMENT

(a) Date patient first visited you for this accident/illness                    Month  Day  Year  ℝ 7/03/2013

(b) Date patient first unable to work due to this accident/illness            Month  Day  Year  2007

(c) List frequency & date(s) patient was examined for this accident/illness 7/3/13, 7/29/13, 8/29/13, 1/6/14, 8/7/14, 10/7/14, 1/14/15, 3/26/15, 4/4/16, 7/27/16, 2/14/17

(d) Date of last visit:     Month  Day  Year  02. 114/2017

**3.** NATURE OF TREATMENT (including Surgery & Medications prescribed, if any)

(a) Hospitalization on:    Month  Day  Year          THROUGH          Month  Day  Year

(b) Surgery on:           Month  Day  Year          Type of Surgery:

(c) Name and Address of Hospital:

(d)

| Medications | Dose | Dosage |
|---|---|---|
| Pristiqu 100 mg/d | Remeron 15 mg/d |  |
| Xanax 2mg TID | Lexapro 10 mg/d |  |
| Ambien CR 12.5 mg/d | Imitrex 100 mg/d |  |
| Rhinocort Aq | Loestrin daily |  |
| Zyrtec 10 mg/d | Oxycodone HCl 5mg every 8° PRN |  |
|  | IBP 800mg Q8°PRN |  |

GB-508056  Rev. 12/2012

Mar. 7. 2017  2:47PM                                          No. 6888    P. 4

## 4. PHYSICAL LIMITATIONS / IF APPLICABLE: In an 8-hour work day is your patient able to:

| | 0 hours | up to 2.5 hours | up to 5.5 hours | greater than 5.5 hours |
|---|---|---|---|---|
| Climb | ☑ | ☐ | ☐ | ☐ |
| Balance | ☑ | ☐ | ☐ | ☐ |
| Stoop | ☑ | ☐ | ☐ | ☐ |
| Kneel | ☑ | ☐ | ☐ | ☐ |
| Crouch | ☑ | ☐ | ☐ | ☐ |
| Crawl | ☑ | ☐ | ☐ | ☐ |
| Reach | ☐ | ☑ | ☐ | ☐ |
| Walk | ☐ | ☑ | ☐ | ☐ |
| Sit | ☐ | ☑ | ☐ | ☐ |
| Stand | ☐ | ☑ | ☐ | ☐ |

Cardiac – If applicable (American Heart Association)
☑ Class 1 – No limitation
☐ Class 2 – Slight limitation
☐ Class 3 – Marked limitation
☐ Class 4 – Complete limitation

Blood Pressure (last visit): 112/68

Please indicate the maximum level of ability (sedentary, light, medium, heavy) of your patient to:

sedentary Lift   sedentary Carry   sedentary Push   sedentary Pull

Sedentary = 10 lbs. maximum, walking occasionally.   Light = 20 lbs. maximum, 10 lbs. frequently
Medium = 50 lbs. maximum, 25 lbs. frequently, up to 10 lbs. constantly.   Heavy = 100 lbs. maximum, 50 lbs. frequently, 20 lbs. constantly.

## 5. MENTAL IMPAIRMENT / IF APPLICABLE - Please complete the following (incomplete information will delay claim processing):

Axis I: Agoraphobia causing delay in treatment of condition

Axis II:

Axis III: Chronic Pain Syndrome

Axis IV: Disabled

Axis V: Current GAF: 51     Highest GAF in past year: 51     Baseline: 51

Additional Comments:

## 6. RETURN TO WORK STATUS

When was patient able to go to work?  NWT

Patient's Regular Occupation: ☐ Full-time  ☐ Part-time  __/__/__

Any Other Occupation: ☐ Full-time  ☐ Part-time  __/__/__

## 7. REMARKS

The patient is disabled due to chronic neck, upper extremity and lower back pain. Her pathology requires surgery and until then she would not be able to participate in gainful employment. In addition her Carpal Tunnel does not allow her to do repetitive activities for more than one hour a day.

Physician Name (Please Print): Maria Mazzotti
Degree & Specialty: DO Family Med
Address (Street, City, State, Zip Code): 1822 Pine St Phila PA 19103
Telephone Number: 215 735 7992
Federal Tax ID #:
Physician Signature:
Date: 3/8/17

GB-608066 Rev. 12/2012



**RITTENHOUSE
INTERNAL MEDICINE**

*adult primary care | women's health*

3/8/2017

To Whom it May Concern,

This letter serves as a supplement to my 2015 letter on Helen Manning 09/10/1980. She recently had an abnormal EMG study of her upper and lower extremities. In addition to the lower extremity abnormalities, it is my professional opinion that her upper extremity pathology would not be conducive to her doing any repetitive activities with her upper extremities, including using a computer. The patient herself has stated many times that spending even a short period of time doing work on her computer will lead to significant aggravation of her upper extremity symptoms.

If you have any questions in this regard, please do not hesitate to call me.

Sincerely,

Maria Mazzotti, D.O.

1632 Pine Street
Philadelphia, PA 19103

Phone: 215-735-7992                    Fax: 215-735-7991

**Andrew L. Gluck, Vocational Economic Analyst**
**3145 Route 44/55**
**Gardiner, NY 12525**
**412 South Perth Street**
**Philadelphia, PA 19147**
**(518) 755-1430**

March 9, 2017

Stuart Winegrad, Attorney at Law
Bezark, Lerner & DeVirgilis
1600 Market Street
Philadelphia, PA 19103

Dear Mr. Winegrad:

I have examined the materials that you gave me and have interviewed your client, Helen
Manning. This is the resulting analysis of loss of the ability to perform remunerative
work. If you require any additional information please feel free to request it.

# Vocational Analysis of Helen Manning

Date of birth: September 10, 1980
Date of onset of disability: 2009 but did not leave work till April 2, 2013
Date of analysis: March 9, 2017
Date of interview: March 8, 2017

Information reviewed: CIGNA letter denying LTD benefits (and attached medical
reports); Medical reports of Elliot Wallack, M.D., Charles Brock, M.D., Maria Mazzotti,
D.O., Rittenhouse Internal Medicine, Penn Medicine; Hellen Manning's CV; List of
medications she is on, Vocational transferable skills analysis, Paul Wilson, M.A., CRC

## *Interview*

Ms. Manning was interviewed on the telephone. She fully understands how her various
disabilities affect her ability to work. She is able to give a complete work history. Her
recent physical problems are a source of constant physical pain as well as functional
impairments. The interview indicated that she no longer has the same abilities that she
previously had

## *Educational History*

Ms. Manning is a college graduate. She has a bachelor's degree in information science
and technology.

## *Work History*

Ms. Manning is not currently working. She was a Senior Systems Engineer at Lockheed Martin from 2004-2013. From 2001-2004 she worked as an IT Systems Analyst for Penn America Insurance, sometimes part-time while she was in school waitress while in school.

## *Injury*

Ms. Manning's partial disability began in 2009 but she continued to work until 2013. At that time she began to suffer from an increasing degree of physical problems. She had additional injuries in 2013 and a subsequent assault. She reports constant pain on an average level of 7 (on a scale of 1-10) when not exerting himself and rising to 9 with exertion. She reports the following physical problems, complaints and limitations.

Prolonged standing
Prolonged walking
Prolonged sitting (must change positions and problems using computers)
Climbing stairs
Pushing and pulling
Lifting heavy weights
Driving (more than 30 minutes)
Repetitive use of upper extremities
Limited range of motion in neck and back
Fatigue
Sleeping
Vomiting

## *Implications of Injury for Employment*

Vocational experts classify jobs as sedentary, light, medium and heavy for purposes of describing the amount of physical exertion that is required to perform them. This is fine for purposes of seeking employment and for ruling in and out particular rehabilitation strategies. For forensic purposes, however, those classifications can be quite misleading. We need to know not only what a person is capable of doing safely but also the actual probability of him or her retaining such employment over time. Some injured workers are capable of performing light employment over a short period of time but after a few days they require prolonged rest and recuperation. Some individuals are even capable of lifting rather heavy weights, which might appear to render them capable of performing heavy work. But if they persisted in such efforts they would become incapacitated. We know that many people are capable of enduring considerable pain if they are highly motivated but eventually it catches up to them and they will give up whichever efforts or circumstances that increase their pain.

The U.S. Commerce Department Current Population Survey classifies occupational disabilities into severe and non-severe. The former are quite unlikely to work at all. The latter while likely to work have a far lower likelihood of doing so than non-disabled workers. The American Community Survey also differentiates disabilities into physical, cognitive, mobility etc. These classifications are very useful as tools for predicting future

2

vocational performance of disabled people. Those reduced probabilities of holding employment must be taken into consideration when an economic loss is projected.

Ms. Manning is not able to work at this time.  She is not currently receiving Social Security disability. As a former vocational expert for the Department of Health and Human Services I opine that she is the kind of person who could be eligible to receive those benefits and Medicare. She reports a very significant list of post-injury conditions and problems. I will consider her to be severely disabled for all practical purposes. Such women with her educational attainment have a 22.5% chance of working Her physical problems are sufficient to render her practically unemployable. Another vocational problem is the side effects of medication.

In terms of a more long-term assessment, disabled women like her earn between $58,750 (median) and $72,042 (mean earnings) when they do work, according to the American Community Survey and Current Population Survey, even when they possess masters' degrees (which she does not).  Psychological and cognitive disabilities are generally more disabling vocationally but her physical problems are currently sufficient to render her severely disabled.  As I stated previously, her likelihood of working is only 22.5% right now. If she improves, that likelihood of employment might rise to 66.5%.  Therefore, her likely earnings *if and only if she improves somewhat* is only $47,908 at best.

## *Methodology*

Methodology is rarely discussed in vocational and economic reports for forensic or other purposes.  Sometimes, however, questions arise and this section briefly addresses those more common ones.   A vocational or economic expert must be acquainted with nomothetic means of evaluating individuals regarding their ability to work and earn money.   For that purpose, government data that is compiled from various surveys is invaluable.  But each individual is unique and it is also important to attempt to understand each of them in terms of their own course of vocational and career development.  These are called ideographic data and methodology.  Qualitative variables must also be taken into consideration and this is best done by those with many years of experience working with disabled people.

Generally speaking, all sciences (both theoretical and practical) rely upon large scale data collection. Those data include averages and relative frequencies as well as more sophisticated statistical means of relating variables to one another.  This is a part of the more general human ability to benefit from the experience of others and not just individual powers of observation and imitation.   Yet, good data, as exemplified by the American Community Survey and the Current Population Survey, do not necessarily demonstrate causal connections. Nevertheless, even without highly developed and validated theories, good data and common sense along with grounding in scientific method can allow for relatively reliable predictions.  A good example of that is the ability to predict tides which far antedated a good theory of how tides are actually generated. Causality in individual cases is something that we normally go to experts such as auto mechanics, engineers and doctors to assess. Good theories in the physical and social sciences also have something to say about causality but in a more general way.  In the

practical human sciences it is often lamented that survey data don't always include adequate outcome studies. A good example is preliminary studies of effects of medicine based on physiological variables such as blood levels. Oftentimes one must wait many years for adequate outcome studies but doctors prescribe medications without them in the rational hope and belief that ultimate outcomes will cohere with the more indirect indicators of healthy outcome. Happily, in the field of vocational economic studies we do have outcome studies in the form of employment and salary statistics for disabled and non-disabled workers.

Any computer literate person can obtain government data and plug it into a particular case. This is not the same as an expert opinion. We need to know to what extent a particular individual resembles an average non-severely disabled person or a severely disabled person if we are to intelligently utilize the Current Population Survey, for example. Or we need to render an opinion regarding whether a particular individual will earn money like an average high school graduate. There is no substitute for professional judgment, born of years of experience. But there are indeed times when all we really know about an individual are the nomothetic data and that method is the only one available to us. This is particularly true in infant cases. On the other hand, a seasoned worker with a good track record or in a highly secure position needs to be evaluated in terms of his or her actual earnings record and propensity to continue working, other things being equal. Even the effects of disability (regarding which we possess a great deal of data) need to be assessed in relationship to the particular individual's unique characteristics and adjustment to disability. Nevertheless, the existence of good government compiled data is a constant backdrop for all of our judgments and a reminder of our own fallibilities. Normally we rely on those data but at times we must take other more individual factors into consideration. A good example is a case where an accident caused a person to abandon or be terminated from a particularly well-paying or secure position.

### *Critique of Transferable Skills Analysis*

Mr. Wilson opines that Ms. Manning can actually perform her own occupation and also an occupation called "Computer Security Specialist." Since the average pay for her own occupation is over $86,000 per year, the implicit argument is that she can perform this occupation even though she was incapable of performing the job where it paid much more. This is counterintuitive! She is a hard-working competitive person who always enjoyed challenges. She would not give so easily, especially if she (who actually has done the job) thought she could do it. And just because the average person in such a job earns $86,000, that does not mean that she could. Frequently, disabled people must take much less demanding and lower paying jobs in order to allow them to sustain employment. Most women with masters' degrees do not earn $86,000 per year.[1] Disabled ones earn much less.[2] The other occupation listed is well-known to me and according to Florida Tech the job involves "day to day management of network security hardware and software, as well as in supporting various aspects of technical installation,

---

[1] American Community Survey
[2] Ibid.

4

operational and performance operations."[3]  This is much too physical for Ms. Manning in her current condition.  In general, however, even if those jobs were feasible she makes a common but flawed assumption: just because Ms. Manning could possibly do such and such a job, which pays on average such and such a salary, therefore she will **be able** to do so.  The government statistics such as the Current Population Survey and American Community Survey tell a very different story.  Indeed, professionals like Mr. Wilson, who have actual experience in placing disabled people on jobs, also tell a very different story.

## *Analysis*

I was asked to opine regarding the following questions.  I will answer them in order.

**Is Ms. Manning unable to perform each and every material duty of any occupation for which she is, or may reasonable become qualified based on education, training and experience since 9/30/15 and in the future?**


 Ms. Manning is unable to perform those functions as a result of physical deficits and problems.  Her pain level prevents her from focusing her attention on the exacting and detailed task required by her former job.  In addition, her need to constantly change positions prevents her from performing the intense computer-based functioning required.


**Is Ms. Manning unable to earn 80% or more of her Indexed earnings?**

Yes, such work is no longer feasible for her. Her prescribed painkillers alone most likely preclude her adequately performing such a skilled, competitive position.[4]  Her chronic neck pain precludes the constant or even very frequent use of computers.  Her carpal tunnel syndrome and cervical radiculopathy, confirmed by diagnostic testing, also restricts that essential activity.[5]  She might be able to earn $72,000 per year but the likelihood ranges between 22.4% and 66.5%.  Currently she is in the lower range of those probabilities.


## *Rationale for this Analysis*

Ms. Manning may not be receiving SSDB now but I expect that she will be in receipt of it until age 66 or 67 when regular retirement benefits begin.  Given her situation, her chances of ever working again full-time are rather miniscule.  We used actual recent earnings and government survey data in order to arrive at these conclusions as well as medical reports and decades of experience in vocational rehabilitation. She may be able to work from time to time or on a part-time basis. This would provide a minuscule amount of earnings.

---

[3] See Florida Tech on line job description
[4] See Dr. Brock's report, p.3 and job description.
[5] See Dr. Brock, p.4.

All projections of future human behaviors and their consequences are probabilistic in nature and inexact even when they are based on nearly certain knowledge. Even experts do not have a crystal ball. Nevertheless, there are good scientific ways of doing it as well as more subjective methods that have poorer predictive value. Normally we can be fairly certain that outcomes such as earnings will fall in a certain range over fairly long periods of time. Unlikely events, however, do occasionally occur. A prudent, rational person does not rely on such improbable occurrences. Likewise, this analysis depicts future scenarios regarding what would most likely have occurred if not for the injury and what is now most likely to occur. It is best trusting the publicly available data in this area. Frequently vocational professionals, who are either not conversant with the actual data or choose to ignore them, simply assume that what is possible will actually take place. This is as faulty as assuming that any college educated person will obtain a job in the six figures. Nor should the worst imaginable consequences of disability be assumed, although they are also possible and may even have a fair degree of likelihood. It is best to be both conservative and prudent in making projections. Adhering to publicly available data is a safer way to project future events than constructing one's own narratives and scenarios based upon what is logically possible but hardly probable.

All of the opinions within this report are asserted with a reasonable degree of professional certainty.

Sincerely,

Andrew L. Gluck, M.A., M.S., M.Ed., Ed.D.

6

## Dr. Andrew L. Gluck

M.A.  M.ED.  M.S.  ED.D.

**Vocational Economic Analyst**

Expert Witness

Phone: 518.755.1430

e-mail: andy_gluck@msn.com

HOME          CURRICULUM VITAE          COURT APPEARANCES          FEE STRUCTURE          CASE SPECIFICS

## Curriculum Vitae

Andrew L. Gluck, M.A., M.S., M.Ed., Ed.D

Business Addresses: 3145 Route 44/55, Gardiner, NY 12525  |  412 South Perth Street, Philadelphia, PA 19147 (518) 755-1430  andy_gluck@msn.com

Date of Birth: March 21, 1944

**EDUCATION:**

9/93 to 12/96

Columbia University, New York, New York 2/97 Ed.D.:

Philosophy and Education Completed all Departmental Requirements for M.A.: Economics and Education Program included interdisciplinary studies in Philosophy, Economics, Psychology and Statistics. Dissertation dealt with Philosophy of the Social Sciences with special application to Economics. Masters thesis dealt with Labor Economics and Education and the concepts of human capital, social capital and cultural capital.

9/88 to 12/89

New York University, New York, New York 10/90 M.S.: Management Program included Microeconomics, Accounting/ Budgeting, Applied Social Sciences, and Administrative Law Thesis dealt with economic and social effects of leadership and authority

9/71 to 12/76

Columbia University, New York, New York 1/77 M.Ed.:

Psychology/Vocational Rehabilitation. Program included 67 credit hours, 500 hour internship at Postgraduate Center for Mental Health

2/73 M.A.:

Education Program included 10 month internship in a high school

9/61 to 5/65

University of Florida, Gainesville, Florida 6/65 B.A. Majors: Economics, Philosophy

**WORK EXPERIENCE:**

2006 to Present

Vocational Economic Analyst (self employed)

2003 to 2006

Adjunct Associate Professor, St. John's University Teach Business Ethics, Philosophy of the Human Person and Bio- Medical Ethics

2000 to 2002

Adjunct Faculty, Hofstra University Taught Ethics and Social/Political Philosophy

1998 to 1999

Adjunct Faculty, Empire State College, State University of New York Taught Economics and Economic History

1997 to 2006

Senior Analyst, Vocational Economics, Inc., New York, New York

1993 to 1997

Vocational Economic Analyst, Vocational Economics, Inc. Conducted assessments to analyze earning capacity in cases of injury or death.

1997 to 1998

Adjunct Faculty, Berkeley College Taught Principles of Economics.

1994 to 1997

Adjunct Lecturer in Economics, Bramson ORT Technical Institute Taught Principles of Economics and American Economic History.

1992 to 1993

Rehabilitation Specialist, New York Rehabilitation Center Provided assessment, medical management, vocational rehabilitation and placement services to injured workers.

1989 to 1992

Vocational Counselor/Coordinator, New York Association for New Americans Counseling and placement of immigrants. Taught course in American Economic System to émigré engineers. Trained and supervised vocational counselors. Designed vocational programs.

1978 to 1989

Vocational Rehabilitation Counselor, New York State Department of Education Assessment, counseling, and job placement of adult disabled clients. Authorization of training, adaptive devices, home/vehicle modifications.

1977 to 1978

Psychologist, New York State Department of Mental Health Provided mental status assessments, psychological testing, community placement, therapy. Taught psychology to nursing staff.

1972 to 1976

Caseworker, New York City Housing and Development Administration Counseling and referrals of residents of urban renewal sites. Responsible for evaluating tenants for suitability for public housing. Staff development of building/relocation managers in area of tenant relations.

**PUBLICATIONS AND PRESENTATIONS:**

Gluck, A.L.
Damasio's Error and Descartes' Truth: An Inquiry into Consciousness, Epistemology and Metaphysics (University of Scranton Press, in press)
Gluck, A.L.
"Karl Jaspers' Phenomenological Approach to Emotion in his General Psychopathology" in Emotions, Qualia, and Consciousness, edited by Alfred Kaszniak (London: World Scientific Publishing Co., 2001)
Gluck, A.L.
"Causality and the Hard Problem of Consciousness." Consciousness and its Place in Nature Conference, Skövde, Sweden, August 2001
Gluck, A.L.
"Open-mindedness vs. Holding Firm Beliefs" Journal of Philosophy of Education, Volume 33, Issue 2
Gluck, A.L., S. Sachnin
"New worklife Tables Meet the Daubert Challenge." Medical Malpractice Law and Strategy, December 2000
Gluck, A.L., D. Gibson
"Vocational Economic Analyses." Delivered to 26th Annual Conference of the Eastern Economic Association, Washington, DC, March 2000.
Gluck, A. L., R. S. David-Harris, and S. Sachnin.
"The Impact of Reduced Worklife Expectancy on Lifetime Loss of Earnings by Disabled Persons." Trial Lawyers Quarterly, Spring 1999, published by the New York State Trial Lawyers Institute.
Gluck, A.L.
Chaired session on Jaspers' General Psychopathology and Scientific Method in Psychiatry for Karl Jaspers Society of North America, Eastern Division Meeting of the American Philosophical Association, Boston, Dec. 1999
Gluck, A.L.
"Karl Jaspers' Psychology of Meaningful Connections and its Relevance to the Study of Consciousness." The Karl Jaspers Society of North America, Eastern Division Meeting of the American Philosophical Association, Washington, DC, Dec. 1998
Gluck, A.L.
"The Assessment of Economic Damages in Cases of Traumatic Brain Injury." Presentation to Seminar of New York State Brain Injury Association, Albany, NY, June 1997.
Gluck, A.L.
"Some Problems in Forensic Economics from the Perspectives of the Philosophy of Economics and Decision Theory." Presentation to Third International Meeting of the Latin American Law and Economics Association, Caracas, Venezuela, June 1997.
Gluck, A.L.
Chairperson of Session on Critical Thinking at Philosophy of Education Society Conference, Vancouver, Canada, April 1997.
Gluck, A.L.
"Regarding the New Worklife Expectancy Tables." Journal of Forensic Economics, Fall 1996.
Gluck, A.L.
"Chaos Theory and its Application to Vocational Counseling: A Critical Reappraisal." Journal of Counseling and Values, Fall, 1996
Gluck, A.L.
"Philosophical Practice in Career and Management Consulting." Perspectives in Philosophical Practice, Win van der Vlist, ed. (Groningen: Vereniging Voor Filosofische Praktijk, 1997). Originally presented at Second International Congress of Philosophical Practice, Leusden, Holland, August, 1996
Gluck, A.L. and R.S. David-Harris.
"Vocational Assessment for Construction Accident Cases." Professional publication presented to New York State Trial Lawyers Institute, Labor Law Seminar, 16 May 1996.
David-Harris, R.S., A.L. Gluck, and S.M. Collard.
"Age Discrimination in the Workplace: Economic Challenges." National Association of Forensic Economics, Allied Social Sciences Conference, January 1996.
Gluck, A.L.
"Use of Vocational and Economic Experts in a Serious Construction Accident Case." Presentation to Association of Trial Lawyers of America, National College of Advocacy, July 1995.
Berlá, E.P., A.L. Gluck, and R.S. David-Harris.
"Economic Damages as a Result of Minimal Personality Changes in Head Injury Cases." Journal of Forensic Economics 8, no. 2 (1995): 199-200.
Gluck, A.L.
"Assessing Lost Earning Capacity of Clients Suffering from Traumatic Mild Brain Impairment." Presentation at Seminar for the benefit of the New York State Head Injury Association, December 1993.
Gluck, A.L.
"Vocational Rehabilitation of Soviet Émigré Engineers." Presentation to Conference of Association of Jewish Vocational Service Professionals, Montreal, June 1991.
Gluck, A.L.
"Vocational Rehabilitation of the Emotionally and Psychiatrically Restored." Presentation and Workshop for Cornell University, New York, New York, March 1979.


**CONSULTATIVE ACTIVITIES:**

1995 to Present
Vocational Expert, U.S. Department of Health and Human Services
1993 to 1997
Editorial Board Reviewer, Journal of Counseling and Values
1989 to 1996
Vocational Consultant, U.S. Department of Labor, Office of Workers Compensation Programs


**HONORS AND AWARDS:**

June 1997
Awarded seal of the city by the Mayor of Caracas in recognition of participation in Latin American Congress on Law and Economics
(1999-Present)
Profiled in Who's Who in the East and Who's Who in America

Experienced Economic Analyst : Educated Vocational Economic Anal...

Home    Court Appearances    Fee Structure    Case Specifics    What is a Vocational Economic Analyst?

© Copyright 2013  Andrew Gluck   All Rights Reserved    www.andrewgluck.com

✼ ✼ ✼  C o m m u n i c a t i o n   R e s u l t   R e p o r t   ( M a r. 15,  2 0 1 7   4 : 1 1 P M )  ✼  ✼  ✼
1)
2)

Date/Time: Mar. 15. 2017  4:04PM

| File<br>No. | Mode | Destination | Pg(s) | Result | Page<br>Not Sent |
|---|---|---|---|---|---|
| 7072 | Memory TX | 18665179873 | P. 21 | OK | |

--------------------------------------------------------------------------------
Reason for error
    E. 1) Hang up or line fail              E. 2) Busy
    E. 3) No answer                         E. 4) No facsimile connection
    E. 5) Exceeded max. E-mail size         E. 6) Destination does not support IP-Fax

LAW OFFICES
**Bezark Lerner & DeVirgilis, P.C.**
A PROFESSIONAL CORPORATION
SUITE 1610
1600 MARKET STREET
PHILADELPHIA, PA 19103
—
TELEPHONE (215) 735-5599
FAX (215) 735-4147

BRIAN R. BEZARK
ERIC I. LERNER
STUART A. WINEGRAD
JOHN DeVIRGILIS

BRUCE MILLER
OF COUNSEL

FAX TRANSMISSION

DATE:   March 15, 2017

TO:   Ms. Angela Akopyan, CIGNA          FAX NO.:   866-517-9873

FROM:   Stuart A. Winegrad, Esquire

RE:   Helen Manning: Your Incident No.: 3056849

MESSAGES/COMMENTS:  Please see attached second appeal.  Thank you.

NUMBER OF PAGES INCLUDING THIS COVER SHEET:   21

**SHOULD YOU ENCOUNTER ANY PROBLEMS DURING
TRANSMISSION OF THESE DOCUMENTS, PLEASE CALL
(215) 735-5599.  THANK YOU!!

# EXHIBIT "E"

*Angela A.*
CIGNA Group Insurance
PO Box 29005
Glendale, CA 91209

Phone: 800-781-2006 ext. 5465307
Fax: 860-731-3311

www.mycigna.com

**CIGNA Group Insurance**
Life · Accident · Disability

MR. STUART A. WINEGRAD
BEZARK LERNER & DE VIRGILIS, P.C.
1600 MARKET ST
SUITE 1610
PHILADELPHIA, PA 19103

March 24, 2017

| | |
|---|---|
| Name: | HELEN MANNING |
| Incident Number: | 5656649 |
| Plan/Policy Number: | LK0008348 |
| Plan/Policy Holder: | LOCKHEED MARTIN CORP HEALTH & WELLNESS |
| Underwriting Company: | Life Insurance Company of North America |

DEAR MR. WINEGRAD,

This letter is in follow-up to our conversation on March 24, 2017 regarding your request to appeal for Long Term Disability (LTD) benefits.

You indicated that you may have additional information to supplement the voluntary appeal received on March 16, 2017. We agree to grant you an extension to provide this additional information and it must be received on or before April 21, 201; otherwise we will move forward with reviewing your client's file for a voluntary appeal review

Please note that anything received after that date will be considered late and may not be reviewed.

Thank you for your continued cooperation.

Please contact our office at 800-781-2006 ext. 5465307 should you have any questions.

Sincerely,

*Angela A.*

Angela A.
Appeal Specialist

CIGNA Group Insurance is a registered service mark of CIGNA Intellectual Property, Inc., licensed for use by insurance company subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York and Connecticut General Life Insurance Company. Products and services are provided by these insurance company subsidiaries and not by CIGNA Corporation.

# EXHIBIT "F"



ATTORNEYS AT LAW

## BEZARK LERNER & DE VIRGILIS PC

BRIAN R. BEZARK
ERIC I. LERNER
JOHN DeVIRGILIS
STUART A. WINEGRAD*

*ALSO MEMBER NJ BAR

March 28, 2017

BRUCE W. MILLER
OF COUNSEL

E-mail: swinegrad@bldvlaw.com

*Via Facsimile Only*
Mr. Justin Randolf
Cigna Group Insurance
629
Disability Management Solutions
P.O. Box 709015
Dallas, TX 75370-9015

    **RE:**   **Helen Manning**
           **Cigna Incident No.:  3056849**
           **Plan/Policy Number:  LK0008348**
           **Plan/Policy Holder: Lockheed Martin Corp.**

Dear Mr. Randolf:

    Kindly allow this letter to seek a recalculation of Cigna's payment to Ms. Manning from October 1, 2014 through September 30, 2015.  According to Cigna's Long Term Disability Statement included with its check in the amount of $61,362.84, Cigna took credits for an assumed benefit of $2,531.00 per month for social security disability benefits presumed received by Ms. Manning.  In fact, Ms. Manning did not receive social security benefits during this time period.  However, Ms. Manning did make application to the Social Security Administration, and as of this date, Ms. Manning has not received benefits for social security disability.  Ms. Manning will provide to Cigna an executed Reimbursement Agreement upon your request.

    In light of the above, kindly forward a check to this office representing credits taken by Cigna but not received by Ms. Manning.  I calculate this amount to total $60,456.00.

    Please contact me with any questions or concerns.

                    Very truly yours,

                    STUART A. WINEGRAD

SAW/db

Communication Result Report ( Mar. 28. 2017 12:38PM )

Date/Time: Mar. 28. 2017 12:37PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|---|
| 7312 | Memory TX | 18558134365 | P. 2 | OK | |

Reason for error
E. 1) Hang up or line fail
E. 3) No answer
E. 5) Exceeded max. E-mail size
E. 2) Busy
E. 4) No facsimile connection
E. 6) Destination does not support IP-Fax

LAW OFFICES

### Bezark Lerner & DeVirgilis, P.C.
A PROFESSIONAL CORPORATION
SUITE 1438
1600 MARKET STREET
PHILADELPHIA, PA 19103

TELEPHONE (215) 735-5599
FAX (215) 735-4747

BRIAN R. BEZARK
ERIC L LERNER
STUART A. WEINGRAD
JOHN DeVIRGILIS

BRUCE MILLER
OF COUNSEL

### FAX TRANSMISSION

DATE: March 28, 2017

TO: Justin Randolf – Cigna Group Inc. FAX NO.: 855-813-4365

FROM: Stuart A. Weingrad, Esquire

RE: Our Client/Claimant: Helen Manning
Your Incident No.: 3056849
Plan/Policy Number: LK0008348
Plan/Policy Holder: Lockheed Martin Corp.

MESSAGES/COMMENTS: Please see attached appeal and materials. Thank you.

NUMBER OF PAGES INCLUDING THIS COVER SHEET: 2

**SHOULD YOU ENCOUNTER ANY PROBLEMS DURING
TRANSMISSION OF THESE DOCUMENTS, PLEASE CALL
(215) 735-5599. THANK YOU!!

LAW OFFICES

# *Bezark Lerner & DeVirgilis, P.C.*

A PROFESSIONAL CORPORATION
SUITE 1610
1600 MARKET STREET
PHILADELPHIA, PA 19103

———————

TELEPHONE (215) 735-5599
FAX (215) 735-4147

BRIAN R. BEZARK
ERIC I. LERNER
STUART A. WINEGRAD
JOHN DeVIRGILIS

BRUCE MILLER
OF COUNSEL

## FAX TRANSMISSION

DATE:    March 28, 2017

TO:    Justin Randolf – Cigna Group Inc.          FAX NO.:        855-813-4365

FROM:    Stuart A. Winegrad, Esquire

RE:        Our Client/Claimant:  Helen Manning
           Your Incident No.:  3056849
           Plan/Policy Number:  LK0008348
           Plan/Policy Holder: Lockheed Martin Corp.

MESSAGES/COMMENTS:   Please see attached appeal and materials.   Thank you.

NUMBER OF PAGES INCLUDING THIS COVER SHEET:_____2_____

**\*\*SHOULD YOU ENCOUNTER ANY PROBLEMS DURING
TRANSMISSION OF THESE DOCUMENTS, PLEASE CALL
(215) 735-5599.  THANK YOU!!**

# EXHIBIT "G"

Angela A.
CIGNA Group Insurance
PO Box 29063
Glendale, CA 91209

Phone: 800-781-2006 ext. 5465307
Fax: 860-731-3211

www.mycigna.com



MR. STUART A. WINEGRAD
BEZARK LERNER & DE VIRGILIS, P.C.
1600 MARKET ST
SUITE 1610
PHILADELPHIA, PA 19103

April 24, 2017

| | |
|---|---|
| Name: | HELEN MANNING |
| Incident Number: | 3056849 |
| Plan/Policy Number: | LK0008348 |
| Plan/Policy Holder: | LOCKHEED MARTIN CORP HEALTH & WELLNESS |
| Underwriting Company: | Life Insurance Company of North America |

DEAR MR. WINEGRAD,

This letter is in follow-up to our conversation on April 24, 2017 regarding your request to appeal for Long Term Disability (LTD) benefits.

You indicated that you may have additional information from SSA to supplement the voluntary appeal received on March 16, 2017.

We agree to grant you an extension to provide this additional information and it must be received on or before May 23, 2017. Please note that anything received beyond that date will be considered late and processed accordingly.

Thank you for your continued cooperation.

Please contact our office at 800-781-2006 ext. 5465307 should you have any questions.

Sincerely,

Angela A.
Appeal Specialist

"Cigna" and the "Tree of Life" logo are registered service marks of Cigna Intellectual Property, Inc., licensed for use by Cigna Corporation and its operating subsidiaries. All products and services are provided by or through such operating subsidiaries, including Life Insurance Company of North America, Connecticut General Life Insurance Company and Cigna Life Insurance Company of New York, and not by Cigna Corporation.

# EXHIBIT "H"



ATTORNEYS AT LAW

## BEZARK LERNER & DE VIRGILIS pc

BRIAN R. BEZARK
ERIC I. LERNER
JOHN DEVIRGILIS
STUART A. WINEGRAD*

*ALSO MEMBER NJ BAR

BRUCE W. MILLER
OF COUNSEL

August 3, 2017

E-mail: *swinegrad@bldvlaw.com*

*__Via Facsimile Only__*
Ms. Angela Akopyan
CIGNA
P.O. Box 29063
Glendale, CA 91209

>    RE:    **Our Client/Claimant:  Helen Manning**
>           **Your Incident No.:  3056849**
>           **Plan/Policy Number:  LK0008348**
>           __Plan/Policy Holder: Lockheed Martin Corp.__

Dear Ms. Akopyan:

    As you know, on May 15, 2017 this office notified CIGNA of the second appeal to your decision communicated by letter dated September 19, 2016, and with that attached documents evidencing Ms. Manning's right to receive LTD Benefits from September 30, 2015 and ongoing, as well as CIGNA using an "assumed credit" as of October 1, 2013.

    On March 24, 2017, CIGNA agreed to grant an extension to provide additional information on or before April 21, 2017.  On April 24, 2017, CIGNA agreed to an extension to provide additional information to be received on or before May 23, 2017.  To date, I have not received CIGNA's decision regarding the issues presented in Ms. Manning's second appeal.

    29 U.S.C. §1133 and 29 C.F.R. §2560.503-1(f)(3) obligated CIGNA to a period of forty-five (45) days to render a decision on Plaintiff's Appeal.  No additional time was requested by CIGNA. As such, we demand that CIGNA immediately pay to Ms. Manning (and her attorney's) the monies as requested in her March 15, 2017 Appeal or otherwise face additional costs and fees as permitted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 et seq.

    Please be guided accordingly.

                                            Very truly yours,

                                            STUART A. WINEGRAD

SAW/db

\* \* \* Communication Result Report ( Aug. 3. 2017  2:34PM ) \* \* \*
                                                                    1)
                                                                    2)

Date/Time: Aug. 3. 2017  2:33PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|---|
| 9692 | Memory TX | 18665179873 | P.   2 | OK | |

--------------------------------------------------------------------------------

Reason for error
    E. 1) Hang up or line fail              E. 2) Busy
    E. 3) No answer                         E. 4) No facsimile connection
    E. 5) Exceeded max. E-mail size         E. 6) Destination does not support IP-Fax

LAW OFFICES

***Bezark Lerner & DeVirgilis, P.C.***

A PROFESSIONAL CORPORATION
SUITE 1650
1635 MARKET STREET
PHILADELPHIA, PA 19103

TELEPHONE (215) 735-5599
FAX (215) 735-4147

BRIAN E. BEZARK
ERIC J. LERNER
STUART A. WINEGRAD
JOHN DeVIRGILIS

BRUCE MILLER
OF COUNSEL

**FAX TRANSMISSION**

DATE:    August 3, 2017

TO:    Ms. Angela Akopyan, CIGNA        FAX NO.:    866-517-9873

FROM:    Stuart A. Winegrad, Esquire

RE:    Helen Manning: Your Incident No.: 3056849

MESSAGES/COMMENTS:  Please see attached.  Thank you.

NUMBER OF PAGES INCLUDING THIS COVER SHEET:    2

**\*\*SHOULD YOU ENCOUNTER ANY PROBLEMS DURING
TRANSMISSION OF THESE DOCUMENTS, PLEASE CALL
(215) 735-5599.  THANK YOU!!**

# EXHIBIT "I"

*Anna Osipova*
*CIGNA Group Insurance*
PO Box 29063
Glendale, CA 91209

Phone: 800-781-2006 ext. 5005
Fax: 866-517-9873

www.mycigna.com



MR. STUART A. WINEGRAD
BEZARK LERNER & DE VIRGILIS, P.C.
1600 MARKET ST
SUITE 1610
PHILADELPHIA, PA 19103

August 15, 2017

Name:                              HELEN MANNING
Incident Number:                   3056849
Plan/Policy Number:                LK0008348
Plan/Policy Holder:                LOCKHEED MARTIN CORP HEALTH & WELLNESS
Underwriting Company:              Life Insurance Company of North America

DEAR MR. WINEGRAD,

This letter is regarding your August 03, 2017 communication requesting a status on Ms. Manning's voluntary appeal.

According to our records Ms. Helen Manning's appeal was initially upheld on September 19, 2016 with the detailed explanation of how the decision was reached.

In our March 24, 2017 letter, in follow up to a telephone conversation on the same day, you were provided with 30 day extension to gather and submit additional information for Ms. Manning's voluntary appeal. You were provided through April 21, 2017 to submit your written request with pertinent records.

On April 24, 2017 you requested additional time and were granted through May 23, 2017 to submit records. You were further informed that any information received past May 23, 2017 will be considered late and handled accordingly.

We did not receive further communication from you until your August 03, 2017 letter requesting a status on Ms. Manning's voluntary appeal. No additional information was attached to your August 03, 2017 communication.

Since your request for reconsideration has been made well after the ERISA-required 180-day timeframe, we must decline your request. At this time you have exhausted all administrative appeal rights and no further appeals will be accepted.

You have the right to pursue legal action regarding your dispute over Ms. Manning's Long Term Disability (LTD) claim, under ERISA section 502(a). Ms. Manning and her plan may have other dispute resolution options, such as mediation. One way to find out which options may be available would be to contact Ms. Manning's local United States Department of Labor office or her State Insurance Regulatory Agency.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein.

At this time Ms. Manning's long term disability claim is closed.

"Cigna" and the "Tree of Life" logo are registered service marks of Cigna Intellectual Property, Inc., licensed for use by Cigna Corporation and its operating subsidiaries. All products and services are provided by or through such operating subsidiaries, including Life Insurance Company of North America, Connecticut General Life Insurance Company and Cigna Life Insurance Company of New York, and not by Cigna Corporation.

August 15, 2017
Page 2

Please contact our office at 800-781-2006 ext. 5005 should you have any questions.

Sincerely,

*Anna Osipova*

Anna Osipova
Senior Appeal Specialist

# EXHIBIT "J"



ATTORNEYS AT LAW

# BEZARK LERNER & DE VIRGILIS PC

BRIAN R. BEZARK
ERIC I. LERNER
JOHN DEVIRGILIS
STUART A. WINEGRAD*

*ALSO MEMBER NJ BAR

BRUCE W. MILLER
OF COUNSEL

August 30, 2017

*E-mail: swinegrad@bldvlaw.com*

**<u>Via Facsimile Only</u>**
Ms. Anna Osipova
CIGNA Group Insurance
P.O. Box 29063
Glendale, CA 91209

> **RE:** **My Client:  Helen Manning**
> **Incident No.:  3056849**
> **Plan/Policy No.:  LK0008348**
> **Plan / Policy Holder:  Lockheed Martin Corp Health & Wellness**
> **Underwriting Company:  Life Insurance Company of North America**

Dear Ms. Osipova:

Kindly provide to this office copies of the subject long-term disability policy and all claims materials regarding Helen Manning, including but not limited to, electronic records, communications, correspondence and appeals.

Thank you for your cooperation in this matter.

Very truly yours,

STUART A. WINEGRAD

SAW/db

⁂ ⁂ ⁂ Communication Result Report ( Aug. 30, 2017 4:36PM ) ⁂ ⁂ ⁂

1}
2}

Date/Time: Aug. 30. 2017 4:35PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|---|
| 0224 | Memory TX | 18665179873 | P. 2 | OK | |

---

Reason for error
E. 1) Hang up or line fail         E. 2) Busy
E. 3) No answer                    E. 4) No facsimile connection
E. 5) Exceeded max. E-mail size    E. 6) Destination does not support IP-Fax

LAW OFFICES
**Bezark Lerner & DeVirgilis, P.C.**
A PROFESSIONAL CORPORATION
SUITE 1650
1608 MARKET STREET
PHILADELPHIA, PA 19103

TELEPHONE (215) 735-5599
FAX (215) 735-4147

BRIAN B. BEZARK
ERIC I. LERNER
STUART A. WINEGRAD
JOHN DeVIRGILIS

BRUCE MILLER
OF COUNSEL

**FAX TRANSMISSION**

DATE: August 30, 2017

TO: Ms. Anna Osipova, CIGNA          FAX NO.: 866-517-9873

FROM: Stuart A. Winegrad, Esquire

RE: Helen Manning; Your Incident No.: 3056849

MESSAGES/COMMENTS: Please see attached. Thank you.

NUMBER OF PAGES INCLUDING THIS COVER SHEET: 2

**SHOULD YOU ENCOUNTER ANY PROBLEMS DURING
TRANSMISSION OF THESE DOCUMENTS, PLEASE CALL
(215) 735-5599. THANK YOU!!

LAW OFFICES

# *Bezark Lerner & DeVirgilis, P.C.*

A PROFESSIONAL CORPORATION
SUITE 1610
1600 MARKET STREET
PHILADELPHIA, PA  19103

———————

TELEPHONE (215) 735-5599
FAX (215) 735-4147

BRIAN R. BEZARK
ERIC I. LERNER
STUART A. WINEGRAD
JOHN DeVIRGILIS

BRUCE MILLER
OF COUNSEL

## FAX TRANSMISSION

DATE:   August 30, 2017

TO:  Ms. Anna Osipova, CIGNA          FAX NO.:        866-517-9873

FROM:     Stuart A. Winegrad, Esquire

RE:        Helen Manning; Your Incident No.:  3056849

MESSAGES/COMMENTS:   Please see attached.   Thank you.

NUMBER OF PAGES INCLUDING THIS COVER SHEET:        2

**\*\*SHOULD YOU ENCOUNTER ANY PROBLEMS DURING
TRANSMISSION OF THESE DOCUMENTS, PLEASE CALL
(215) 735-5599.  THANK YOU!!**